1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

TRIPHONIA HOWARD,

No. C04-5474RBL

11

Plaintiff,

12

v.

13

THE STATE OF WASHINGTON; THE
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES; and CHARLES
HUNTER , individually and in his official
capacities,

ORDER ON
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT

14
15
16

Defendants.

17
18
19

     This matter is before the court on Defendants' Motion for Summary Judgment. [Dkt. #23]  The

20

case involves claims by Triphonia Howard arising from his employment with the Washington State

21

Department of Social and Health Services.  His complaint alleges that he was the subject of discrimination

22

due to his race, color and disability, and that his employer retaliated against him after he complained about

23

his unfair treatment.  He also claims that Defendant Hunter breached an enforceable promise to give him a

24

raise in exchange for his performing additional duties, and sues under a "promissory estoppel/breach of

25
26

contract" theory.

27

     Defendants have moved for Summary Judgment on all of these claims.  In Response to Defendant's

28

Motion, Howard abandoned his claims for race and color discrimination under 42 U.S.C. §§1981 and

1983, Title VII, and Chapter 49.60 RCW.  He also did not oppose dismissal of his state law disability discrimination claims under Chapter 49.60 RCW and his state law claims for negligent supervision, retention, and/or hire.  Accordingly, each of these claims is DISMISSED.

Mr. Howard's remaining claims are for retaliation under Federal and state law, and a state law promissory estoppel claim.  Specifically, he claims  (1) he did not receive a promised raise after doing extra work, (2) his position was eliminated in retaliation for his complaints about salary inequity and his suggestion that that inequality was due to his race, and (3) that in retaliation for his complaints, the Defendants withdrew an offer to allow him to retain his then-current salary despite his acceptance of a lower-paying position.

**A.      Factual Background.**

Viewed in the light most favorable to the Plaintiff, the evidence establishes the following facts.  Mr. Howard, an African-American, began his employment as the Forms and Records Manager of the DSHS in 1998.  He was employed by Washington Management Services (WMS) at an annual salary of $50,004. He claims that, in 2002, he discovered that he had received fewer and less significant pay raises than what he claims were similarly situated[1] "WMS Band 2 Managers." Howard was apparently the only African-American among the group of managers.  At or about the time he made this discovery, he approached the Director of the Administrative Services Division (ASD), Charles Hunter, and told him that he (Howard) did not feel he was being fairly compensated.  His contemporaneous notes, a later written complaint, his Complaint in this action, and his deposition testimony do not claim that he attributed the inequality to his race.  However, in response to the Defendant's Motion, Howard's Declaration claims he told Hunter that he believed the reason he was not receiving similar pay raises was because he was African-American.

---

[1]It should be noted that, according to the Defendants, the salary information relied upon by Mr. Howard is inaccurate and does not reflect that the other employees had, in contrast to Howard, received promotion and better performance reviews.  They assert that the comparisons were made to employees with different job titles, duties, and supervisors.

In any event, it is apparently agreed that as a result of this discussion, Hunter told Howard that he could earn additional salary, either in the form of a raise (Howard's view) or through a "TIP" (Team Incentive Program) award (Hunter's view), by completing a series of special projects.   Howard claims[2] that he did so, but the raise did not follow. Evidence in the form of Howard's own Declaration establishes that Hunter told Howard repeatedly that Hunter needed approval from his own superior, Mr. Harden[3], in order to get Howard a raise.

In March 2003, Howard spoke with his direct supervisor, Mr. Schnellman, who informed him that his position would be eliminated as part of a Reduction in Force (RIF).  The Defendants provided uncontroverted evidence that this decision was made in February, 2003, and it was the result of budget constraints and cut backs directed by the Governor's office in December 2002.

In response to this news, Howard interviewed for, but did not obtain, a different position in the ASD.  Another WMS Manager, Sue Bush, then offered Howard a different position in the Contracts and Purchasing area.  Howard accepted this position (in lieu of a formal RIF procedure) on or about April 10, 2003.  He claims he did so "with the understanding" that he would retain his then-current salary level, but does not provide evidence that Hunter, Bush, or anyone else was responsible for his "understanding." Indeed, according to Howard, he met with Hunter about his new position and his salary on April 18, 2003, and informed him that he "needed to know the specifics" of his new salary, as he was to begin in his new position on April 21.

Two days after he began his new job, on April 23, Hunter again confronted Hunter about his salary and Hunter told him that he would retain his then-current salary of $56,400, despite the fact that that meant he would be making more than his supervisor.   Howard also wanted the raise that he felt had been

---

[2]Defendants dispute Mr. Howard's conclusory testimony that he "completed the special projects;" they claim that they were forced to step in to ensure that the projects were timely and correctly completed.

[3]Hunter and Harden, like Mr. Howard, are African-American males.

promised in connection with his prior work on the special projects. Howard again asked Hunter about a raise and Hunter told him it was not going to happen.  According to Howard, Hunter got angry and told him to take his (formal) RIF option.  On April 25, 2003, Hunter withdrew his offer to allow Howard to retain his salary level.  Hunter claims (and Howard acknowledges that Hunter said) this was the result of his attitude and his complaining about not getting a raise.  After the formal RIF process, Howard retained his new position as Contracts and Purchasing Consultant, but he was paid only $47,352 – the "top salary" for that position.

The Defendants offer evidence that the RIF procedure resulted from budget constraints and directives dating to December 2002, that six positions were eliminated, and that the RIF affected both minorities and Caucasians.  They claim that the elimination of Mr. Howard's position was the result of budget cuts directed by the Governor's office, and the closing of the Publications and Forms warehouse where Howard worked.

They claim that after Howard expressed his dissatisfaction with the offer to retain his then-current salary, a formal RIF procedure was then instituted, resulting in the lower salary at the new position.  The Defendants provide evidence supporting their claim that the RIF procedure was properly done and that Howard received the top salary for his new position after that process.  Defendants deny that Howard was promised a raise, and deny that the either their failure to give him one or the RIF process (including the new, lower salary) van be viewed as retaliatory under the evidence and the summary judgment standard.

**B.   Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor."  *Triton Energy*, 68 F.3d at 1220.

## C.   Plaintiff's Retaliation Claims.

Mr. Howard's primary cause of action appears to be his claim that the Defendants retaliated against him for complaining about salary inequality.  This alleged retaliation takes three, not necessarily consistent forms: (1) the defendants failed to give him a promised raise in retaliation for complaining about salary disparity; (2) the defendants retaliated by "RIF - ing"  or eliminating his position, and (3) the defendants retaliated by withdrawing their offer to retain his then-current salary at his new position.

To establish a retaliation claim under Title VII (42 U.S.C. §2000e-3(a)), a plaintiff must demonstrate that (1) he engaged in protected opposition to discrimination, (2) he suffered an adverse employment action, and (3) a causal link exists between the two.  *See Jordan v. Clark*, 847 F.2fd 1368 (9th Cir. 1988).

Washington law (Chapter 49.60 RCW) is essentially the same.  In order to establish a prima facie case of retaliatory discharge, [Plaintiff] must show that he was engaged in a statutorily protected activity, that [Defendant] discharged him or took some other adverse employment action against him, and that retaliation was a substantial factor behind the adverse action.  *See Kahn v. Salerno*, 90 Wn. App. 110, 129, 951 P.2d 321 (1998). However, opposition to an employer's possible discrimination does not enjoy absolute immunity; an employee may still be terminated for proper cause even when engaged in protected activity.  *Id.*

Both statutory schemes recognize that because unlawful motivation is not likely to be overt, it can

and must often be proven by circumstantial evidence.  The casual link between protected activity and

adverse employment action can be inferred from the temporal relationship alone.  *See Villiarimo v, Aloha*

*Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002); *Vasquez v. State*, 94 Wn. App. 976, 985, 974 P.2d 348

(1999).

Additionally, Washington follows the familiar *McDonnell Douglas* burden-shifting framework.  If

the plaintiff establishes a prima facie case, then the defendant may attempt to rebut the case by presenting

evidence of a legitimate reason for the employment decision. The burden then shifts back to the plaintiff,

who can attempt to prove the employer's reason is pretextual.  *Kahn*, 90 Wn. App. at 129.

### 1.      Opposition to Discrimination.

Howard claims that he engaged in opposition to discrimination in 2002, when he complained about

salary disparity and attributed it to race, and again in April 2003, when he again asked for a raise he claims

was promised a year earlier.   Viewing the evidence[4] in the light most favorable to him, Howard has

established that his complaints about racial salary disparity in Spring, 2002, were "opposition to

discrimination."

Similarly, for purposes of summary judgment, Howard's Declaration is minimally sufficient to

establish that in March and April, 2003,  he again complained about the fact he had not received a raise,

and that he did so in the context of a complaint that he was being treated unfairly due to his race.  For

purposes of his retaliation claim, the court will assume that Howard has met his prima facie burden of

establishing protected "opposition" activity.

---

[4]Although he kept notes of what he perceived to be the relevant events starting in March 2003, those
notes do not reflect anywhere Howard's current allegation that he complained about salary in the context of
race.  He did not make such an assertion in his complaint, and he did not relate that as a part of his deposition
testimony as late as December 2005. These allegations arose for the first time in his Declaration filed in
response to the Defendants' Motion.

**2.       Adverse Employment Action.**

Mr. Howard's claim depends on establishing that he was subject to some adverse employment action.  It is not necessary that he be terminated to meet this element, but he must show that he was subject to a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Plaintiff's first claim is that after he complained about salary inequity in 2002, he was offered the opportunity to earn a raise if he performed some "special projects," subject to the approval of Mr. Hunter's own superior, Mr. Harden.  Even assuming that he performed the projects, it is apparently undisputed that budget constraints impacted the Department in late 2002, and not only was the raise not  forthcoming, Mr. Howard's position was slated for elimination.  Plaintiff has not provided, and the court is unaware, of any case holding that an employees failure to get a raise under these circumstances is a sufficiently "significant" adverse employment action for purposes of a federal or Washington state law retaliation claim.  The fact that Howard did not obtain the admittedly conditional raise he sought and worked for starting in 2002 is not a sufficient basis for establishing this element of his retaliation claim.

Mr. Howard similarly claims that the Defendants retaliated against him in April 2003 for again seeking a raise.  At that time, he was offered the option to retain his old salary in his new position (which he had accepted as the result of the elimination of his old position).  When he asked again about a raise, he was told that would not be possible.  Two days later, the offer to allow him to retain his old salary was effectively withdrawn.  As the Defendants point out, there was no statutory requirement for them to retain his old salary, it would have resulted in him making more than his new supervisor, and he was not pleased with that resolution.  He was encouraged to (and did) pursue his formal "RIF" option, which resulted in him obtaining the new position he had already started, at the top salary for that position.  However, at the time he elected to go through the formal RIF process, it was possible that a different, perhaps better

paying, position would be found. Mr. Hunter implicitly acknowledged as much by pursuing that course rather than simply staying in that new position without going through the formal RIF process.

Howard has not cited any authority holding that the withdrawal of a gratuitous offer to permit one to be paid at a salary higher than the top salary for the position – where the employee expresses his dissatisfaction with that arrangement – is a sufficiently significant adverse employment action for purposes of a retaliation claim. And, even assuming that Howard's request for a raise on top of his old salary retention in the new, otherwise lower-paying, position can be viewed as an adverse action, the burden then shifts to the Defendants to produce legitimate, non-discriminatory reasons for the action.

They have done so – the arrangement already held the potential for conflict among Howard and his lower salaried supervisor in the new position, and Mr. Hunter wanted to avoid the possibility of "two unhappy employees." Mr. Howard was not happy with what appears now to have been a generous and favorable resolution to the elimination of his position (keeping his salary in a lower position), but Howard cannot meet his burden of showing that the reason for the withdrawal of that offer is pretextual, and that the real reason was due to protected opposition activity.

Mr. Howard also claims that the Defendants retaliated against him in "initiating the process to eliminate his position." In a different factual context, this might suffice to establish the adverse employment action element of his claim. Mr. Howard claims that this was done following his conversation with Mr. Hunter in April 2003. However, it is clear, even from Howard's perspective, that the decision to eliminate his position was relayed to him a month earlier, in March. And the Defendants have demonstrated that it was actually made in February, following budget constraints made known to it in December 2002.

### 3.    Causal Connection.

Mr. Howard relies almost exclusively on what he claims is the close temporal proximity between his

"opposition activity" in April 2003 and the withdraw of the offer to permit him to retain his current salary. As discussed above, the timing does not support his claim with respect to the elimination of his position, as that decision was made prior to his complaint in April 2003.

Even when viewed in the light most favorable to Mr. Howard, the evidence does not permit an inference that the timing of the withdrawal of the offer to permit him to retain his old salary in his new position was in retaliation for seeking a raise on top of retaining his old salary. It is true that the timing of an event can in some cases support such an inference. In this case, however, there are several undisputed facts which preclude such an inference.

First, there is only the slightest evidence that "discrimination" was even a topic of conversation between Hunter and Howard on April 23. Mr. Howard did not mention it until he responded to this Motion. As is evidenced by Howard's promissory estoppel claim, he was not arguing for racial equality in salary, he was pushing for a raise he thought had been specifically promised to him, for doing additional work.

Second, the factual context of the discussion does not support any inference that Howard was the subject of retaliation for continuing to complain about racial disparity in salary. Hunter offered to permit Howard to retain his old salary in a new, lower paying position he already accepted – an offer he was under no legal duty to make. Howard's position had been eliminated, for reasons wholly unrelated to his performance or his complaints about discrimination, and he had no legal claim to a higher salary than the new position carried. Nevertheless, he was offered such a resolution, and he instead pushed for an additional raise. It simply does not make logical sense that if the Defendants were going to punish Mr. Howard for his opposition activity – activity he now claims dated to 2002 – they would first offer him a salary higher than the one to which he was otherwise entitled.

Finally, the reasons for the withdrawal given by the Defendants – Howard was not going to be

happy with the deal, and it was already awkward due to his making more than his new supervisor, and Hunter felt Howard was ungrateful and exhibited a "bad attitude" – are not discriminatory or retaliatory. Other than the timing, Howard has no evidence that the real reason the "sweetheart" deal was withdrawn was because he engaged in opposition activity on April 23.

No reasonable jury could find on these facts that there was a causal connection between Howard's opposition activity and the withdrawal of the offer to retain his salary.  Defendant's Motion for Summary Judgment on Plaintiff's Retaliation claims is GRANTED and those claims are DISMISSED.

**D.       Plaintiff's "Aiding and abetting Discrimination" Claim.**

Mr. Howard's "aiding and abetting" claim against Mr. Hunter is directly related to his retaliation claims.  For the reasons above, that claim fails and the "aiding and abetting" claim against Mr. Hunter similarly fails, and is DISMISSED .

**E.       Plaintiff's Promissory Estoppel/Breach of Contract claim.**

Mr. Howard's alternate theory, unrelated his retaliation claim, is that Mr. Hunter made in 2002 an enforceable promise to give him a raise if he performed some "special projects."  He entitles his claim on this issue "promissory estoppel/breach of contact" but apparently argues[5] only that he is entitled to enforce the promise through the equitable doctrine of promissory estoppel under Washington law.

Promissory estoppel requires a promise which the promisor should reasonably expect to cause the promisee to change his position and which does cause the promisee to change his position, justifiably relying on the promise in such a manner that injustice can be avoided only by enforcement of the promise. *See Jones v. Best,* 134 Wn.2d 232, 950 P.2d 1 (1998).

Howard argues that he was promised a raise by Mr. Hunter, that he changed position in reliance on

---

[5]It should be noted that while the Plaintiff's complaint does include as its Fourteenth Cause of Action a "Promissory Estoppel/Breach of Contract" claim, it relates not to a raise but to a TIP award.  Mr. Howard received a $3250 TIP award in December, 2004.

it, and that he is entitled to enforce that promise in the interest of justice.  However, he admits, repeatedly, that Hunter at all times told him that any raise was conditioned upon the approval of Mr. Harden, which was undisputedly not obtained.  A statement of future intent is not the unequivocal promise necessary to invoke the doctrine of promissory estoppel.  *See Wright v. Miller*, 93 Wn. App. 189, 963 P.2d 934 (1998).  Furthermore, the alleged "promise" of a "raise" is not sufficiently specific to enforce, even if the other elements had been met.  There is simply no evidence from which a court could determine the amount of the raise to which Mr. Howard was allegedly entitled.  Thus, the first element of an unequivocal promise is not met as a matter of law.

Second, Mr. Howard did receive a $3250 TIP award in connection with the additional duties he performed, in December 2004.  His Complaint in this matter alleged only the failure to pay that award as the basis for his promissory estoppel claim.  To the extent he "changed position" in "justifiable reliance" on Mr. Hunter's conditional promise, equity and justice do not require the enforcement of the now-claimed additional promise of a separate raise under the facts of this matter.

Finally, Howard has not addressed the conclusion that, under Washington law, public employees may not assert such claims in the employment context.  *See Weber v. State*, 78 Wn. App. 607, 611, 898 P.2d 345 (1995) ("In Washington, terms and conditions of public employment are controlled by statute, not by contract. . . . [C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel.")  Mr. Howard's promissory estoppel claim fails as a matter of law.  Defendant's Motion on that claim is GRANTED and the claim is DISMISSED.

*///*

*//*

*/*

Therefore, it is HEREBY ORDERED that Defendant's Motion for Summary Judgment [Dkt. #23] is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

DATED this 10th day of March, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE